IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| STATE AUTO PROPERTY AND<br>CASUALTY INSURANCE COMPANY, | Civil Action File No. 5:16-CV-148 (CAR) |
| Plaintiff, | |
| v. | |
| TPI CORPORATION, | |
| Defendant. | |

**DEFENDANT TPI CORPORATION'S MOTION TO COMPEL**

Defendant TPI Corporation ("TPI"), by and through its counsel, and pursuant to the Court's Order of February 6, 2017, Federal Rules of Civil Procedure 26 and 37, and this Court's Minute Sheet of Court Proceedings [ECF #28], hereby moves this Court for an Order compelling Plaintiff State Auto Property and Casualty Insurance Company ("State Auto") to respond to five Requests for Production of Documents served on November 8, 2016. In support of this Motion, TPI submits the attached exhibits, and the following Statement of Undisputed Material Facts, Applicable Law and Analysis of Requests for Production. TPI requests that the Court issue an Order compelling State Auto to fully respond to these five Requests for Production within fourteen days.

**I.     STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. This is an insurance subrogation product liability action.

2. State Auto, subrogated to the interests of its insured Lolos Real Estate/Nu-Way Weiners, Inc. (collectively "Nu-Way"), alleges that an infrared heater manufactured by a dissolved wholly-owned subsidiary of TPI, Fostoria Industries, Inc. ("Fostoria"), in September

2008 and installed by a non-party electrical contractor in January 2009, was defective.

3. The defect in the Fostoria heater, State Auto alleges, caused a March 13, 2015 fire and resulting property damage losses.

4. The heater was installed in violation of warnings affixed to the heater and set forth in Fostoria's installation instructions that accompanied the heater.

5. Specifically, the Fostoria installation instructions require the heater to be installed with overcurrent protection, utilizing either a fast-acting fuse ("FAF") or a ground fault circuit interrupting ("GFCI") breaker.

6. The heater installed by State Auto's non-party electrical contractor did not include a FAF or a GFCI.

7. The heater installation violated the National Electrical Code ("NEC") which requires electrical equipment to be installed in accordance with manufacturer's instructions and warnings.

8. The subject State Auto policy of insurance expressly provides that State Auto has no obligation to pay damage claims for losses that result from "faulty, inadequate or defective. . . workmanship, repair or construction":

> B.   Exclusions.
> \* \* \* \*
>
> 3.   We will not pay for loss or damage caused by or resulting from . . .
>
> \* \* \* \*
>
>   c.   Faulty, Inadequate or Defective:
>
> \* \* \* \*
>
>     (2) design, specifications, workmanship, repair, construction, renovation. . . . (*See* State Auto policy of insurance

excerpt bates-labeled MALLIS 001263-1270, attached as Exhibit A.)

9. At the time of the March 13, 2015 fire, and for at least five years prior, State Auto's insured Nu-Way had no functioning sprinkler or fire suppression system at the insured property, and Nu-Way was repeatedly cited by governing authorities for its failure to comply with applicable fire safety and building codes.

10. State Auto was aware, at least two years before the March 13, 2015 fire, that the Nu-Way building sprinkler system did not comply with fire safety and building codes.

11. According to Nu-Way, State Auto charged higher insurance premiums as a direct consequence of Nu-Way's failure to maintain a fire suppression system that complied with fire safety and building codes.

12. State Auto conducted annual inspections and assessments of the Nu-Way property to determine whether to renew coverage.

13. State Auto reported to Nu-Way, in writing, after each annual property inspection and assessment with recommendations for improvement to the property and elimination of safety hazards.

14. According to Nu-Way, nearly all written records, including correspondence with State Auto, were destroyed in the March 2015 fire and resulting fire suppression efforts.

15. State Auto has produced in discovery one Risk Control Inspection report only, from February 2013.

16. Following the March 13, 2015 subject fire, State Auto cancelled coverage for the Nu-Way property.

17.     TPI submitted its Second Request for Production of Documents to State Auto on November 8, 2016, and on December 15, 2016, State Auto served the responses attached hereto as Exhibit B.

## II.    LAW APPLICABLE TO THIS DISCOVERY DISPUTE

### A.    Discovery Standards Under Federal Rule of Civil Procedure 26 and 37.

District courts have "broad discretion in fashioning discovery rulings." *DeRubeis v. Witten Techs., Inc.,* 244 F.R.D. 676, 678 (N.D. Ga. 2007).  Rule 26(b)(1) provides that the scope of discovery includes "any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Evidence is "relevant" if it has "any tendency to make the existence of any fact or consequence more or less probable than it would be without the evidence."  *United States v. Capers*, 708 F.3d 1286, 1308 (11th Cir. 2013).

Fed.R.Civ.P. 37, meanwhile, allows a party to move for an order compelling disclosure or discovery.  Fed.R.Civ.P. 37(a)(1).  A party seeking an order to compel may do so if a party fails to respond to an interrogatory or fails to permit inspection of documents.  Fed.R.Civ.P. 37(a)(3)(B).

### B.    TPI's Burden of Proof Under Georgia's Non-Party Fault Statute.

TPI filed a Notice of Fault of Non-Parties on November 28, 2016 [ECF #22].  O.C.G.A. § 51-12-33 provides that the negligence or fault of a non-party may be considered by the trier of fact if a defending party gives notice that that non-party was wholly or partially at fault.  *See* § 51-12-33(d)(1).  As with other affirmative defenses, the defendant who brings the notice of non-party fault has the burden at trial to prove that defense.  *See Union Carbide Corp. v. Fields*, 315 Ga.App. 554, 556 (2012).  If properly brought and proven at trial, a factfinder may consider the fault of all persons or entities who contributed to the alleged injury or damages "regardless of

whether the person or entity was, or could have been, named as a party to the suit." O.C.G.A. § 51-12-33(c).

### C.      Defenses Available to a Product Liability Defendant in Georgia.

State Auto's claim against TPI is for negligent product liability.  In Georgia, if a defendant manufacturer is found liable under a traditional theory of negligence, the defenses of contributory and comparative negligence are applicable.  *See Patterson v. Long*, 321 Ga.App. 157, 161, 741 S.E.2d 242 (2013).  Under the doctrine of comparative negligence, a product liability plaintiff will be precluded from recovering "if the negligence of the plaintiff is equal to or greater than that of the defendant," and the plaintiff's recovery will be reduced "if the negligence of the plaintiff is less than that of the defendant."  *Ray v. The Ford Motor Co.,* 237 Ga.App. 316, 319-20, 514 S.E.2d 227 (1999).

The same holds true for assumption of risk; this defense is available in product liability actions that sound in negligence.  Successfully proving that defense requires a showing that a plaintiff is "fully aware of the dangerous defect or condition caused by defendant's negligence but freely chooses to proceed nonetheless."  *Cotton v. Bowen*, 241 Ga.App. 543, 544, 524 S.E.2d 737 (1999).  In asserting the defense of assumption of the risk; a defendant must establish that the plaintiff:   1) had actual knowledge; 2) understood and appreciated the risks; and 3) voluntarily exposed itself to those risks.  *Yamaha Motor Corp., USA v. McTaggart*, 313 Ga.App. 103, 105, 720 S.E.2d 217 (2011).

In the subrogation context, a subrogee, standing in the shoes of the subrogor, is subject to "any defenses that could be asserted against the subrogor."  *Allstate Ins. Co. v. ADT, LLC,* 194 F.Supp.3d 1331 (2016).  This includes "any defenses that might have been urged" against the

insured.  *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 262, 356 S.E.2d 877 (1997).  TPI's defenses are thus equally applicable to State Auto, as subrogee, and to Nu-Way, as subrogor.

### D.     The Discoverability of an Insurance Underwriting File.

Request for Production No. 1, set forth in greater detail below, seeks the production of State Auto's underwriting file for the policy and property at issue in this case.  Though no Georgia federal court appears to have squarely confronted the issue of the discoverability of an insurance underwriting file under these circumstances, other federal district courts considering the issue have determined that such files are discoverable:

> Many courts have already addressed the issue of the discoverability of underwriting files, when the <u>general consensus is that they are discoverable</u>.

*See Clean Earth of Maryland, Inc. v. Total Safety, Inc.*, N.D. W.Va. Case No. 2:10-cv-119, 2011 WL 4832381, unreported (copy attached as Exhibit C) (Emphasis supplied).  Relying on cases from district courts in Colorado, Florida, and Nevada, the *Clean Earth* court recognized that an insurance underwriting file may be relevant where "the scope of a risk undertaken" by the insurance company is at issue.  This is precisely the rationale underlying TPI's request in this case.  It is axiomatic that an insurer has the right to exclude from its policy coverage any risk that it is not willing to cover.  *See Matjoulis v. Integon Gen. Ins. Corp.* 486 S.E.2d 684, 685 (Ga. Ct. App. 1997) (stating that "an insurer may insure against certain risks and exclude others").  Directly relevant to TPI's affirmative defenses of contributory negligence, assumption of risk and voluntary payment is the question of the precise "scope of the risk" State Auto undertook in this case.  TPI should be entitled, under Fed.R.Civ.P. 26, to conduct discovery on the issues of the insurer's knowledge and assumption of the risks inherent in insuring a 100+ year old building with a non-functioning fire suppression system and an overhead electric heater installed in

violation of the National Electrical Code.  The same reason holds true for State Auto's decision to insure the Nu-Way property at purportedly higher premiums.  The manner in which State Auto, in conjunction with its insured Nu-Way, measured its exposure in light of these risks, and perhaps even evaluated and assessed the likelihood and magnitude of future claims, is directly relevant to TPI's product liability defenses under Georgia law.  These are precisely the type of "scope of risk undertaken" issues that led courts to order the production of underwriting files in the cases referenced above.

      E.      **Voluntary Payment and Subrogation Under Georgia Law.**

In Georgia, "an insurer's voluntary payment to its insured does not give rise to a right of subrogation."  *S.Mut. Church Ins. Co. v. ARS Mech., LLC*, 306 Ga.App. 748, 703 S.E.2d 363, 366 (2010).  A payment may be considered "voluntary" in the subrogation context when the insurer who pays is under "no legal obligation to make the payment, and is not compelled to do so for the preservation of any rights or property of his own."  *Nationwide Mut. Ins. Co. v. Kershaw Mfg. Co., Inc.*, 198 Ga.App. 153, 154, 401 S.E.2d 23 (1990).

In *Nationwide v. Kershaw*, the court reasoned that the insurer was not entitled to subrogation "in view of an exclusion in the policy" for loss resulting from "faulty, inadequate or defective . . . design, specifications, workmanship, repair, construction . . . ."  *Id.*  As set forth in paragraph 8 of TPI's above Statement of Undisputed Critical Facts, the Nationwide policy exclusion, in virtually identical words, appears in the State Auto policy of insurance at issue in this case.  Based on this same language, the *Nationwide* court concluded that the plaintiff

insurance company was precluded from acquiring a right of subrogation, and affirmed summary judgment in the defendant's favor as a result. *Id.*[1]

### III.   ANALYSIS OF REQUESTS FOR PRODUCTION

The analysis below sets forth each of the five Requests for Production at issue, along with an analysis of the Georgia law that renders each Request compliant with Rule 26 of the Federal Rules of Civil Procedure.

**Request for Production No. 1  Produce all underwriting files State Auto created, reviewed or relied on to evaluate State Auto's decision to renew insurance coverage for the Premises at any time.**

This Request seeks discoverable and relevant information that renders facts critical to TPI's defenses more or less probable than they would be without the information.  First, State Auto's underwriting files may contain information TPI requires to meet its burden of proof on its non-party fault defense under O.C.G.A. § 51-12-33.  TPI provided notice of potential fault against several entities, including State Auto's insured and the installer of the Fostoria heater alleged to be the subject of State Auto's product liability claims.  Discovery has revealed that the Fostoria heater was improperly installed, in violation of Fostoria's warnings and its installation instructions, as well as the NEC.  Likewise, discovery has shown that State Auto had some knowledge, in 2013, that the Nu-Way property had no functioning sprinkler or fire suppression system, and that the system was not compliant with fire safety and building codes.  State Auto's underwriting file may contain detailed descriptions of the company's assessment of these risks of

---

[1]  TPI disputes State Auto's claim that the defense of voluntary payment, in the subrogation context, is an affirmative defense that is waived if not timely asserted.  Nonetheless, TPI requests that it be afforded leave under Fed.R.Civ.P. 15 to amend its answer to include the voluntary payment defense.  TPI submits that Rule 15 permits leave to be "freely given when justice so requires," and should only be denied if there is evidence of conduct such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment . . ." or other like circumstances.  *Foman v. Davis*, 371 U.S. 178, 1982, 83 S.Ct. 227 (1962).  No such circumstances exist in this case.

loss, additional evidence of the company's knowledge leading up to the subject fire, related correspondence with Nu-Way, and information from independent risk assessment professionals and/or fire safety and building code authorities. All of this information is relevant to TPI's burden of proof to establish fault on behalf of the non-parties it has identified. Communications with Nu-Way in particular, according to the sworn testimony of Nu-Way's witnesses, were destroyed in the March 13 fire and resulting fire suppression efforts. The only source of this information thus appears to be State Auto's files and for this reason as well, the underwriting file is discoverable.

Second, the contents of State Auto's file are relevant to TPI's defenses of contributory negligence and assumption of the risk. Not only does TPI assert these defenses against State Auto directly, but because State Auto also "stands in the shoes" of Nu-Way, it is subject to these defenses as if there never were a right of subrogation. State Auto's underwriting file may contain communications with Nu-Way, or its insurance broker, regarding: 1) Nu-Way's "actual knowledge of the danger" of an improperly installed infrared heater, or a non-functioning fire suppression system that violated fire safety and building codes, either of which would tend to make the existence of critical facts underlying TPI's assumption of risk defense more probable than they would be without the evidence; 2) Nu-Way's comparative negligence in allowing these hazardous conditions to exist despite knowledge of potential danger, the existence of which would potentially preclude or eliminate State's Auto's recovery against TPI altogether. *See Ray*, 237 Ga.App. at 319-20. Without this information, TPI is prejudiced in its ability to meet its burden of proof on these affirmative defenses both as to State Auto standing in the shoes of its insured, and as to State Auto, independent of its subrogor, Nu-Way.

It is critical to further note that the underwriting files, whether or not they contain reference to the non-functioning fire suppression system or the non-NEC-compliant heater, are highly relevant to TPI's defenses. If, on one hand, State Auto repeatedly advised its insured that an appliance installed in violation of NEC in the 100+ year old building, and/or a non-functioning sprinkler system, were safety hazards that could potentially lead to loss – advice that Nu-Way failed to heed – such information is surely relevant to TPI's comparative negligence and assumption of risk defenses. If, on the other hand, State Auto had knowledge of these hazards, failed to so advise its insured, and nonetheless agreed to insure the property, albeit at a higher premium, this information is likewise relevant to TPI's defenses as they relate to State Auto itself. TPI sought to evaluate and support these defenses by serving these discovery requests in November 2016, but State Auto refuses to respond.

Third, if State Auto made a Nu-Way property coverage decision, and/or at any time evaluated whether it had a coverage obligation despite its "faulty, inadequate or defective workmanship, repair or construction," that information is certainly relevant to the question of whether State Auto made voluntary payments to its insured that do not give rise to a right of subrogation. *See S. Mut. Church*, 703 S.E.2d at 366. As the *Nationwide v. Kershaw* court recognized, no right of subrogation arises in improper or defective installation cases where there is a policy exclusion for "defective design, manufacture or construction." *See Nationwide Mut.*, *supra*. Here, there is no dispute that the Fostoria heater was installed in violation of the company's express warnings and installation instructions and the National Electrical Code. Accordingly, any information contained in State Auto's underwriting file which could include or describe communications by and between State Auto and its insured, reflecting their knowledge of the defective workmanship and construction at the insured property, is relevant to TPI's

voluntary payment defense.  TPI is prejudiced in its ability to meet its burden of proof as to this defense as a consequence of State Auto's refusal to respond to this Request for Production.

Finally, the *Clean Earth of Maryland* decision cited above recognizes that underwriting materials may be "relevant to the scope of the risk undertaken" by the insurance company and in such instances such files are discoverable.  State Auto's underwriting file may address its knowledge of the scope of the risks in light of the multiple hazards set forth above, as well as the knowledge of its insured, in whose shoes State Auto stands for purposes of this lawsuit.  The file may also address State Auto's measurement of the potential risks and the decision to command a higher premium as a consequence.  This Court should thus follow the "general consensus" of courts recognizing that underwriting files, in appropriate circumstances, are discoverable.  *See Clean Earth, supra*.

**Request for Production No. 2**  **Produce all written guidelines and documents setting forth State Auto's criteria for evaluating any submission or request for property insurance in the years 2010 through 2015.**

The rationale for this Request is identical to that for Request for Production No. 1 and to avoid redundancy, TPI expressly incorporates its arguments set forth above, and will not fully re-state them here.  The information sought is discoverable and relevant to:  1) TPI's burden of proof under its non-party fault motion under O.C.G.A. § 51-12-33; 2) TPI's ability to satisfy its burden of proof under its assumption of risk and contributory negligence defenses; and 3) TPI's ability to support its voluntary payment defense.

Additionally, TPI states that the "written guidelines and documents" which summarize State Auto's criteria for evaluating property insurance submissions is further relevant to TPI's defenses because such guidelines will presumably show whether State Auto complied with its

11

own guidelines in both measuring its exposure and evaluating the magnitude of future claims. These subjects have a tendency to make the existence of facts critical to TPI's defenses "more or less probable" than they would be without the evidence. *See Capers*, 708 F.3d at 1308.

**Request for Production No. 3** Produce all written guidelines and documents setting forth State Auto's specific procedures for evaluating any submission or request for property insurance in the years 2010 through 2015.

The rationale for this Request is identical to that for Request for Production Nos. 1 and 2 above and to avoid redundancy, TPI expressly incorporates its arguments set forth above, and will not fully re-state them here. The information sought is discoverable and relevant to: 1) TPI's burden of proof under its non-party fault motion under O.C.G.A. § 51-12-33; 2) TPI's burden of proof under its assumption of risk and contributory negligence defenses; and 3) TPI's ability to support its voluntary payment defense.

**Request for Production No. 4** For each of State Auto's employees, contractors, or agents (including but not limited to State Autos loss control engineers) who were involved with evaluating any underwriting decision for the Premises for the time period 2005 through 2015, produce each such employee's/contractor's/agent's files, notes, memos, and other documents created or relied upon to evaluate State Auto's decision to provide or renew insurance coverage for the Premises.

The rationale for this Request is identical to that for Request for Production Nos. 1-3 and to avoid redundancy, TPI expressly incorporates its arguments set forth above, and will not fully re-state them here. The information sought is discoverable and relevant to: 1) TPI's ability to satisfy its burden of proof under its non-party fault motion under O.C.G.A. § 51-12-33; 2) TPI's ability to satisfy its burden of proof under its assumption of risk and contributory negligence defenses; and 3) TPI's ability to support its voluntary payment defense.

Additionally, documents created specifically for the Nu-Way property and relied upon to evaluate its coverage decisions, are highly relevant to TPI's defenses because they show direct knowledge on the part of State Auto and Nu-Way of the potential hazards inherent in insuring the Nu-Way property.  As set forth in TPI's Statement of Undisputed Facts above, State Auto produced one such document, a Risk Control Inspection Report, from February 2013.  However, according to sworn testimony from Nu-Way, such inspections, accompanied also by written letters with safety and property improvement recommendations were issued every single year the policy was in effect.  These recommendations, and any written materials that support them, are highly relevant to TPI's defenses and TPI is prejudiced by State Auto's refusal to produce them.

**Request for Production No. 6:  If not provided with State Auto's responses to the above Requests, produce any and all files created, maintained, or relied upon by Tammy Lindey and Scott Jacobs for purpose of evaluating State Auto's decision to provide or renew coverage for the Premises.**

The rationale for this Request is identical to that for Request for Production Nos. 1-4. The information sought is discoverable and relevant to:  1) TPI's burden of proof under its non-party fault motion under O.C.G.A. § 51-12-33; 2) TPI's ability to satisfy its burden of proof under its assumption of risk and contributory negligence defenses; and 3) TPI's ability to support its voluntary payment defense.

IV.   **CONCLUSION**

For the reasons set forth above, and pursuant to settled Georgia law and the Federal Rules of Civil Procedure, Defendant TPI Corporation requests that the Court enter an Order compelling plaintiff State Auto to fully respond to Requests for Production Nos. 1, 2, 3, 4 and 6 within fourteen days.

Respectfully submitted,

*s/Thomas W. Baker*
**Mark F. McCarthy** (*pro hac vice*)
Ohio State Bar No. 0013139
LEAD COUNSEL
**Thomas W. Baker** (*pro hac vice*)
Ohio State Bar No. 0070558
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Tel:   (216) 592-5000
Fax:   (216) 592-5009
mark.mccarthy@tuckerellis.com
thomas.baker@tuckerellis.com

*Attorneys for Defendant TPI Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on a copy of the foregoing *Defendant TPI Corporation's Motion to Compel* was served was served by electronic mail and regular U.S. Mail, postage prepaid on this 21st day of February, 2017 to:

    David M. Bessho
    Cozen O'Connor
    1230 Peachtree Street, N.E., Suite 400
    Atlanta, Georgia  30309
    Telephone: (404) 572-2000
    Facsimile: (404) 572-2199
    dbessho@cozen.com

    *Attorneys for Plaintiff*

    *s/Thomas W. Baker*
    *One of the Attorneys for Defendant*
    *TPI Corporation*